JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IN RE ADVANCED PACKAGING AND
PRODUCTS COMPANY, Debtor.

GINGER ROOT OFFICE ASSOCIATES,
LLC,

              Appellant,

vs.

DAVID Y. FARMER, Chapter 7 Trustee,

              Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 09-05045 MMM
CASE NO. CV 09-05748 MMM
BANKRUPTCY NO. ND 08-11392-RR

ORDER AFFIRMING AND REVERSING
JUDGMENTS OF THE UNITED STATES
BANKRUPTCY COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

Appellant Ginger Root Office Associates, LLC ("Ginger Root") appeals an order of the
bankruptcy court granting a motion for summary judgment filed by the bankruptcy trustee of
Advanced Packaging and Products Company in Ginger Root's adversary proceeding against him.
The trustee argued that Ginger Root's alter ego claim against PJH Brands was an asset of the
Advanced Packaging and Products Company bankruptcy estate under 11 U.S.C. § 541(a)(1), and
the bankruptcy court agreed.[1]  Ginger Root also appeals the bankruptcy court's subsequent order

---

[1]This appeal was filed under Case Number CV 09-05045 MMM, and transferred to this
court as related to *Ginger Root Office Associates LLC v. Advanced Packaging & Products Co.*,
Case No. CV 07-05568 MMM, which is currently stayed pending resolution of the adversarial

approving the estate's sale of the alter ego claim to PJH Brands.[2]   The bankruptcy court's summary judgment order was entered on June 26, 2009, and its order approving the sale was entered on July 29, 2009; appellant filed timely notices of appeal as to both orders under 28 U.S.C. § 158(c)(2) and Rule 8002(a) of the Federal Rules of Bankruptcy Procedure.[3]   This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court.  28 U.S.C. § 158(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.     Ginger Root's Alter Ego Claim

The facts underlying Ginger Root's alter ego claim are not in dispute.[4]  From 1989 to 2007, Advanced Packaging and Products Company ("APP") leased property located at 16131 Maple Avenue in Gardena, California from Ginger Root and its predecessors in interest.[5]  APP conducted

---

proceeding brought by Advanced Packaging's bankruptcy trustee against Ginger Root.  (See Order re Transfer, Docket No. 13 (August 20, 2009).)

[2]This appeal was filed under Case Number CV 09-05748 MMM, and was also transferred to this court as related to *Ginger Root Office Associates LLC v. Advanced Packaging & Products Co.*, Case No. CV 07-05568 MMM.  (See Order re Transfer, Docket No. 20 (October 7, 2009).)

[3]Ginger Root filed a notice of appeal of the bankruptcy court's summary judgment order on July 2, 2009 (Appellant's Appendix for Appeal of Summary Judgment ("SJ AA") at 339), and a notice of appeal of the order approving the sale of assets on July 30, 2009.  (Appellant's Appendix for Appeal of Order Approving Sale of Assets ("Sale AA") at 510).

[4]See Appellant's Opening Brief in Case Number 09-05405 ("App.'s SJ Br.") at 5 ("For the purposes of this appeal, none of the following facts are in dispute as the Trustee admitted all such facts for purposes of Ginger Root's Cross-Motion for Summary Judgment"); Plaintiff David Y. Farmer's Statement of Genuine Issues, SJ AA at 326 ("While most of the facts listed in Ginger Root's separate statement of uncontroverted facts are irrelevant to the issues now before this court, the Trustee admits, for the purposes of this motion only, all of the facts set forth therein").

[5]SJ AA at 74, 271.  On May 18, 1989, APP, which was known at the time as PJH Group, assumed the lease obligations of Sperex Corporation/VHT, which had been leasing the property since 1972.  (SJ AA at 271, ¶ 5).  Ginger Root acquired the property in 2001, and entered into a new lease with APP that year.  (SJ AA at 271–72).  Under the new lease, APP assumed liability for all hazardous substances released by its operations as well as those of its predecessors.  (SJ

business operations on the property that included manufacturing, assembling, packaging, mixing, distributing and warehousing paint, paint supplies, aerosol and related materials.[6]  During the course of its operations at the property, APP stored "hazardous substances" as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA'), 42 U.S.C. § 9601 *et seq.*[7]

One or more releases of hazardous substances occurred while APP was leasing the property, and subsequent investigations have revealed elevated levels of hazardous substances in the soil and groundwater.[8]  As early as 2004, Ginger Root began demanding that APP remediate the site.[9]  On January 9, 2006, a fire occurred at the property, resulting in a substantial additional release of hazardous substances in APP's storage yard  and onto adjacent property through fire-suppression runoff.[10]  As a result, the Environmental Protection Agency asserted jurisdiction over the site, and issued an administrative order requiring removal of above-ground contamination at the property.[11]  The California Regional Water Quality Control Board requested groundwater sampling, which indicated elevated levels of hazardous substances in the soil and groundwater at the property.[12]

As a result of this environmental contamination, Ginger Root alleges that the market value of the property has diminished,[13] and that it is now liable for continued environmental cleanup and

---

AA at 294, ¶ 2).

[6]*Id.* at 74–75.

[7]*Id.* at 119.

[8]*Id.*

[9]*Id.*

[10]*Id.*  One of APP's employees was killed in the fire, and two others were critically injured.  (*Id*. at 120.)

[11]*Id*. at 120.

[12]*Id.*

[13]App.'s SJ Br. at 7.

monitoring costs under CERCLA and similar regulations.[14]  Further, Ginger Root alleges that it incurred damages in the form of necessary repair costs following the 2006 fire and subsequent environmental investigations.[15]  Finally, Ginger Root seeks breach of contract damages for APP's failure to pay rent, and for the potential liability it faces as a result of the fire and related release of hazardous substances.[16]

### 1.    Ginger Root's State Court Claims

On June 20, 2006, Ginger Root filed a cross-complaint in Los Angeles Superior Court against APP, PJH Brands and Steven Renshaw, seeking damages caused by the 2006 fire.[17]  Many of Ginger Root's state court claims have now been settled, and the only remaining cross-defendants are APP and PJH Brands ("PJHB").[18]  Ginger Root is pursuing claims against APP and PJHB for negligence, breach of contract and nuisance.[19]  Additionally, it seeks declaratory relief regarding the companies' obligations under the lease to defend and indemnify it against third-party claims.[20]

While each of these claims is alleged collectively against APP and PJHB, Ginger Root asserts that it has sued PJHB both "individually and as an alter ego of APP."[21]  Indeed, Ginger

---

[14]*Id.* at 7–8.

[15]*Id.* at 8.

[16]*Id.* at 8–9.

[17]SJ AA at 33–57.  Ginger Root states that its state court cross-complaint is "based on the above-ground (surface and shallow soil) contamination and other damages resulting from the fire and explosions that all occurred on one day (January 9, 2006).  (App.'s SJ Br. at 9.)

[18]App.'s SJ Br. at 9.  While Ginger Root originally sued PJH Brands, a Nevada corporation, and PJH Brands, Inc., an Arizona corporation, the Nevada corporation is the only PJH entity and only alter ego defendant that remains in the case.  (See SJ AA at 358–59.)

[19]*Id.* at 9–10; SJ AA at 240–45.

[20]App.'s SJ Br. at 10; SJ AA at 245–49.

[21]App.'s SJ Br. at 9.  Neither party clearly articulates the exact corporate relationship between APP and PJHB.  While Ginger Root's federal complaint alleges that PJHB is the parent of APP, this allegation does not appear in Ginger Root's summary judgment filings or on appeal.  The Trustee states that PJHB is an "affiliate" of APP without further explication.  (SJ AA at 74,

Root's state court complaint contains several allegations related to PJHB's liability as an alter ego, including: (1) that "APP was insufficiently capitalized"; (2) that PJHB "utilized the assets, funds, equipment, and/or capital of APP for [its] own purposes and use"; (3) that "APP was merely a shell, conduit, and/or instrumentality through which [PJHB conducted its] personal business"; (4) that PJHB "exercised such complete control over APP and its business activities . . . that its separateness, individuality, and independence from [PJHB] did not exist"; and (5) that "corporate formalities recognizing the separateness of APP as an entity separate and apart from [PJHB] were not observed."[22]

## 2.    Ginger Root's Federal Claims

On August 24, 2007, Ginger Root filed a federal action against APP, PJHB and Steven Renshaw based on below-ground contamination of soil and groundwater at the property due to long-term releases of hazardous substances.[23]  Renshaw was dismissed on December 31, 2008, and APP's default was entered on February 18, 2009, leaving PJHB as the sole active defendant. While Ginger Root's federal complaint pleads seven causes of action, it represents that it is pursuing only three claims against APP and PJHB: (1) cost recovery under CERCLA, (2) breach of the lease agreement, and (3) continuing public nuisance.[24]  The CERCLA and nuisance claims are asserted against "defendants" collectively, while the breach of contract claim contains specific allegations against each of APP and PJHB.[25]

Like its state court complaint, Ginger Root's federal complaint alleges an alter ego claim

---

¶ 2.)  Although Ginger Root disputes this characterization, it does not explain why it is incorrect or provide its own description of the companies' corporate relationship.  (SJ AA at 112.)

[22]SJ AA at 36–37.

[23]*Id.* at 58–72.  Ginger Root states that its federal complaint "is based on the below ground (deep contamination of soil and groundwater) caused by releases of hazardous substances from, among other things, underground and above-ground tanks, occurring over the course of a decade, and prior to the January 9, 2006 fire."  (App.'s SJ Br. at 10.)

[24]App.'s SJ Br. at 11.

[25]SJ AA at 62–68.

against PJHB.  The federal complaint, however, contains none of the allegations found in the state court complaint concerning PJHB's control of APP or APP's undercapitalization.  Instead, it states simply that "PJHB is the parent corporation of APP, and is the alter ego of APP."[26]

While not clearly alleged in either complaint, Ginger Root argues PJHB's alter ego liability is based on its "active[ ] participati[on] in the acts and releases of hazardous substances caused by APP."[27]  Ginger Root's summary judgment filings adduce no evidence to support this claim, however.  Instead, they merely suggest that evidence exists that "will show that PJHB is liable under CERCLA for the acts and releases of hazardous substances caused by APP; . . . [and] . . . that PJHB is liable for the contamination cased by APP."[28]

**B.     The Bankruptcy Court's Summary Judgment Order**

While the state and federal actions were pending, on June 18, 2008, APP filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[29]  Appellee David Y. Farmer ("Trustee") was subsequently appointed trustee of the bankruptcy estate.[30]  The Trustee included an alter ego claim against PJHB, valued at $325,000, among the assets of the bankruptcy estate.[31]  On February 3, 2009, he filed a complaint in bankruptcy court, seeking declaratory relief that the alter ego claim asserted by Ginger Root in both the federal and state cases was the property of the bankruptcy estate under 11. U.S.C. § 541(a)(1).[32]  At the time of this filing, the Trustee had

---

[26]*Id.* at 60, ¶ 14.

[27]App.'s SJ Br. at 11.

[28]SJ AA at 157; SJ AA at 225.  Ginger Root attached nearly identical declarations signed by Keith Walker in support of its opposition to the Trustee's motion for summary judgment and its cross-motion for summary judgment.  (*Id.*)

[29]*Id.* at 30, ¶ 3.  Ginger Root has filed an unsecured proof of claim for $2,794,185.11 in the bankruptcy proceedings.  (*Id.*)

[30]*Id.*

[31]*Id.* at 11, ¶ 14.

[32]*Id.* at 8–14.

already negotiated a potential sale of the claims to – or more aptly stated, had settled the claims with – PJHB.[33]  The Trustee subsequently filed a motion for summary judgment regarding the estate's ownership of the claims,[34] which Ginger Root opposed.[35]  Ginger Root filed a cross-motion for summary judgment, asserting that its alter ego claim was not the property of APP's bankruptcy estate.[36]

On June 26, 2009, the bankruptcy court heard the cross-motions.[37]  Rejecting Ginger Root's arguments to the contrary, the bankruptcy court found that it had not alleged in either its state or federal complaint that PJHB acted independently of APP in connection with operations on the property.  The court noted at the hearing on the motions that "there [was] nothing in [the complaints] that alleges that PJHB was operating on the property independently, for its own purposes, other than as the alter ego of APP."[38]  Consequently, the bankruptcy court concluded that Ginger Root's alter ego claim against PJHB was general in nature, and was the property of APP's bankruptcy estate.  It stated: "[T]here's no theory stated that PJHB did anything independently of APP.  It was its alter ego, and [Ginger Root] may now want to reanalyze the complaint so that [it] think[s] it states that PJHB did something affirmative all on its own, but my reading of . . . each of the complaints, is that PJHB is alleged to be the alter ego of APP and, as such, is also liable, which outside of bankruptcy might be perfectly fine.  However, the Trustee can administer an alter ego claim for relief for the benefit of all of the creditors."[39]

Accordingly, the bankruptcy court granted the Trustee's motion and denied Ginger Root's

---

[33]*Id.* at 335.

[34]*Id.* at 19–79.

[35]*Id.* at 92–200.

[36]*Id.* at 204–306.

[37]*Id.* at 352–71.

[38]*Id.* at 361.

[39]*Id.* at 368.

1   cross-motion, signing an order prepared by the Trustee.[40]  At the conclusion of the hearing, Ginger

2   Root sought to clarify the scope of the bankruptcy court's order, i.e., to confirm that "to the extent

3   that we have direct claims, those are not property of the estate?"[41]    The bankruptcy court

4   responded: "If you have direct claims because PJHB was out there with its little PJHB hat on,

5   doing bad things, then you have a direct claim and not an alter ego claim, but . . . I'm not ruling

6   on that."[42]   On July 2, 2009, Ginger Root appealed the bankruptcy court's order granting the

7   Trustee's motion for summary judgment.  It elected to have the appeal heard by the district court.[43]

8   ### C.     The Bankruptcy Court's Approval of the Sale of the Alter Ego Claim

9        On February 5, 2009, just after filing his motion for summary judgment on the alter ego

10  claim, the Trustee filed a motion seeking authority from the bankruptcy court to enter into an asset

11  purchase agreement with PJHB.[44]   Although the Trustee did not request authority actually to sell

12  the assets, he sought preliminary authorization to enter into the agreement so that he could receive

13  the nonrefundable deposit of $26,719.45 that PJHB had committed to pay, and that the Trustee

14  required to fund litigation with Ginger Root regarding ownership of the alter ego claim.[45]   The sale

15  itself was subject to the contingency that the Trustee secure rights to the alter ego claim, which was

16  the primary asset covered by the agreement.   The agreement provided that if the Trustee's

17  ownership of the alter ego claim was recognized, PJHB would pay the estate an additional $80,000

---

19  [40]*Id.* at 336–38.  The bankruptcy court's order states that "Ginger Root's alter ego claims
20  asserted against [PJHB] and Steven Renshaw . . . are assets of APP's bankruptcy estate pursuant
    to 11 U.S.C. § 541."  (SJ AA at 337.)

22  [41]*Id.* at 369.

23  [42]*Id.*

24  [43]*Id.* at 345–46.

25  [44]Sale AA at 330.

26  [45]*Id.* at 330–34.  As the estate had no cash assets, an immediate deposit of $26,719.45 was
27  needed to fund the Trustee's litigation against Ginger Root to determine ownership of the alter ego
    claim.  Obtaining a non-refundable deposit, therefore, was a significant issue in the Trustee's
28  negotiation of an agreement with PJHB.  (*Id.* at 551–72.)

to finalize sale of the asset to PJHB;[46] if the Trustee was not successful in his adversary proceeding against Ginger Root, however, PJHB could not recoup the deposit it paid to the Trustee.[47]

While the alter ego claim was the primary asset that the Trustee contemplated transferring, the proposed agreement sold rights to two other claims to PJHB as well. These were: (1) the right to pursue a request previously made by APP to the RWQCB for reimbursement of $600,000 in remediation work and (2) the right to seek recovery from Ginger Root for miscellaneous equipment left at the property.[48] The agreement allowed third parties to outbid PJHB's offered purchase price for the rights, and the Trustee gave notice to APP's creditors of the proposed agreement.[49] Although Ginger Root filed an objection, arguing that the alter ego claim was not property of the estate,[50] the bankruptcy court granted the Trustee's motion on March 3, 2009, and authorized him to enter into the proposed agreement. It did not at that time approve the sale of the assets.[51]

Following the bankruptcy court's determination that the alter ego claim was property of the estate, the Trustee moved on July 2, 2009 for an order approving the sale of assets pursuant to the agreement.[52] Ginger Root opposed the motion, arguing (1) that the bankruptcy court lacked jurisdiction to approve sale of the alter ego claim because its summary judgment order had been appealed, (2) that the Trustee had not proffered evidence that the compromise with PJHB was fair

---

[46]The sale of this asset was intended to settle any alter ego claim the estate might assert against PJHB for the amount of money paid to the estate by PJHB.

[47]*Id.* at 334.

[48]*Id.* at 337–46. While included within an "Asset Purchase Agreement," the bankruptcy court noted that the provision regarding the alter ego claims was really a compromise between the Trustee and PJHB. (*Id.* at 557-58.) The proposed agreement also provided that PJHB would waive its secured lien against the estate, although not its claim as an unsecured creditor. (*Id.* at 333.)

[49]*Id.* at 339.

[50]*Id.* at 348–53.

[51]*Id.* at 368–80.

[52]*Id.* at 381–399.

and equitable, (3) that PJHB should be required to waive any right to recover as an unsecured creditor from the estate as a condition of acquiring the alter ego claim, and (4) that the Trustee had adduced no evidence that PJHB was a good faith purchaser.[53]

The bankruptcy court heard the Trustee's motion on July 28, 2009.[54] Concluding that approving the sale of the alter ego claim to PJHB would not change the status quo relative to Ginger Root's appeal, the bankruptcy court rejected Ginger Root's argument that it lacked jurisdiction.[55] Because no stay had been entered, the bankruptcy court found that it maintained jurisdiction to effectuate its prior order granting the Trustee the right to assert the alter ego claim.[56]

In reviewing the materials provided by the Trustee in support of his motion, however, the bankruptcy court noted that there was no evidence provided regarding the Trustee's efforts to sell the rights or the fact that PJHB was a good faith purchaser.[57] When the court indicated that it would continue the hearing so those issues could be addressed, Philo Harvey, President of PJHB and a former board member of APP, offered to testify.[58] He subsequently stated under oath that PJHB had negotiated the purchase for more than six months with the Trustee, that it had increased its offer during the course of the negotiations, and that it had agreed to release its security lien on

---

[53]*Id.* at 419–24. While Ginger Root had not sought a stay of the bankruptcy court's order pending appeal, Ginger Root did request a stay in the event the bankruptcy court approved the proposed sale of assets. (*Id.* at 424.)

[54]*Id.* at 542–82.

[55]*Id.* at 547.

[56]*Id.* ("[T]he fact that you appealed the judgment . . . doesn't prevent me from going forward with promoting execution of the judgment and sale of the property. The alter ego rights, as part of the property here, [are] not stayed at all by the filing of an appeal. I can't change the status quo. I'm not changing the status quo promoting the judgment that was previously entered").

[57]*Id.* at 548–50.

[58]*Id.* at 550–61. Counsel for Ginger Root was given an opportunity to cross-examine Harvey.

10

the assets being transferred to reach a final agreement.[59]  Harvey also provided PJHB's valuation of the claims being sold pursuant to the agreement.  He stated that the value of the RWQCB claim was "very low" because the RWQCB had initially reimbursed only $5,000 of the claim, rejecting $170,000 outright and requiring further documentation for the balance.[60]  Because he did not know if documentation still existed, Harvey did not believe that any significant additional recovery could be expected.[61]  Harvey testified that the value of the property claim was less than $30,000 because the equipment at issue was old.[62]  While offering little detail regarding PJHB's valuation of the alter ego claim, Harvey stated that the claim was open to bid and would be worth what a third party was willing to pay for it.[63]

PJHB's counsel, Georgiana Rodiger, also made an offer of proof that the company's attorneys had initiated discussions with the Trustee as early as August 2008 regarding a potential asset purchase.[64]  Rodiger stated that during the negotiations, the parties had exchanged four or five drafts of an agreement to address various issues raised by the Trustee, such as PJHB's security lien.[65]

In addition to Harvey's testimony and PJHB's offer of proof, the bankruptcy court had the Trustee testify telephonically regarding the potential sale.[66]  He stated that he had not tried independently to market the claims to third parties because he felt that they had little value on the

---

[59]*Id.* at 555–56.

[60]*Id.* at 557-58.

[61]*Id.*

[62]*Id.* at 558.

[63]*Id.* at 559.

[64]*Id.* at 561.

[65]*Id.* at 563.  Although Rodiger spoke of a "tax lien issue," it is apparent she meant to reference the security lien addressed in the proposed agreement.  (*Id.*)

[66]*Id.* at 563–64.

open market.[67]   Characterizing the RWQCB and property claims as "add-ons" to the alter ego claim, the Trustee testified that the alter ego claim was of potential value only to PJHB or Ginger Root, and that Ginger Root had indicated no willingness to purchase the claim.[68]   The Trustee described the claims as a "package of assets that [was] not likely to be sold by putting an ad in Easy Ad or Crying Manor across the street."  Rather, he said, he had determined that he had found "the only potential buyer [for the assets] and that[,] but for this buyer[,] there would be no sale whatsoever."[69]   The Trustee noted that the estate could not litigate the alter ego claim itself because it had no money to pay litigation counsel, and there was little chance of finding a lawyer who would handle the matter on a contingent fee basis.[70]

Based on the testimony provided at the hearing, the bankruptcy court approved the assets sale.[71]   It found that there was no collusion between the estate and PJHB, and that they had conducted a "good faith" negotiation.  Consequently, it concluded that PJHB was a good faith purchaser.[72]  While the court noted that the Trustee had not marketed the claims beyond providing notice of the proposed sale to creditors and indicating that they could submit a higher bid, it found that the Trustee had negotiated the best sale possible given the limited market for the claims and the estate's limited ability to litigate them.[73] [74]  Based on the difficulties the estate faced litigating

---

[67]*Id.* at 566–70.

[68]*Id.* at 566–72.

[69]*Id.* at 566.

[70]*Id.* at 566–72.

[71]*Id.* at 579–80.

[72]*Id.* at 579.

[73]*Id.* ("I do not find any collusion between the Trustee and PJHB. . . . The Trustee has not sought other buyers admittedly, but believes there's no market for any of this, that it's really only Ginger Root and PJHB that have an interest in this and Ginger Root has decided not to engage. So this is the last best purchaser available").

[74]*Id.*

the alter ego claim, the court also found that the Trustee's compromise with PJHB was fair and equitable.[75]

Ginger Root appealed the bankruptcy court's order approving the sale,[76] and elected to have the appeal heard by the district court.[77]   On Ginger Root's motion and posting of a bond, the bankruptcy court stayed the sale pending the appeal.[78]

## II.  DISCUSSION

### A.      Standard of Review

The district court has jurisdiction to hear appeals from final judgments, orders or decrees of the bankruptcy court.  28 U.S.C. § 158(a).  When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal.  *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).

A grant of summary judgment is reviewed *de novo*, *Boyajian v. New Falls Corp.*, 564 F.3d 1088, 1090 (9th Cir. 2009), and may be affirmed on any ground supported by the record.  *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).  "The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether genuine issues of material fact exist and whether the . . . court correctly applied the relevant substantive law."  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).   In ruling on cross-motions for summary judgment, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.  *ACLU of Nevada*, 333 F.3d at 1097; *Hopper v. City of Pasco*, 241 F.3d 1067, 1078 (9th Cir. 2001).

A bankruptcy court's decision as to whether it has subject matter jurisdiction is reviewed *de novo*.  *Vylene Enters., Inc. v. Naugles, Inc.* (*In re Vylene Enters., Inc.*), 90 F.3d 1472, 1475

---

[75]*Id*. at 578–79.

[76]*Id*. at 510–26.

[77]*Id*. at 527–28.

[78]*Id*. at 535–38.

(9th Cir. 1996) ("Because the issue here is whether the bankruptcy court had jurisdiction . . . we conduct a *de novo* review").  Because the Trustee sought approval of the sale under 11 U.S.C. § 363(b)(1), the court reviews the bankruptcy court's order of approval for abuse of discretion. See *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc.* (*In re Air Beds, Inc*.), 92 B.R. 419, 422 (9th Cir. BAP 1988) (noting that the court reviews "appeals from orders to sell property of the estate other than in the ordinary course of business pursuant to 11 U.S.C. § 363(b) for abuse of discretion,"citing *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp*.), 722 F.2d 1063, 1071 (2d Cir. 1983)); *Darby v. Zimmerman* (*In re Popp*), 323 B.R. 260, 265 (9th Cir. BAP 2005) (same); see also *In re Ewell*, 958 F.2d 276, 279 (9th Cir. 1992) (applying an abuse of discretion standard in reviewing a bankruptcy court's determination that a party was a good faith purchaser); *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1380, 1381, 1383 (9th Cir. 1986) (applying an abuse of discretion standard to review of a bankruptcy court's order finding that a compromise of claims was fair and equitable).

The bankruptcy court abuses its discretion if "it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *In re Popp*, 323 B.R. at 265.  It is not appropriate to reverse an order for abuse of discretion unless the reviewing court has "a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon weighing the relevant factors." *Stine v. Flynn* (*In re Stine*), 254 B.R. 244, 248 (9th Cir. BAP 2000) (citing *In re Cortez*, 191 B.R. 174, 177 (9th Cir. BAP 1995)). Findings of fact cannot be reversed unless they are clearly erroneous. *Sierra Steel, Inc. v. Totten Tubes, Inc.* (*In re Sierra Steel, Inc*.), 96 B.R. 275, 277 (9th Cir. BAP 1989); *In re Popp*, 323 B.R. at 265.

## B.    The Bankruptcy Court's Summary Judgment Order

In its appeal, Ginger Root argues that the bankruptcy court erred in granting summary judgment to the Trustee because its alter ego claim against PJHB is a particularized claim, which does not belong to the estate.[79]

---

[79]App. SJ Br. at 1.

### 1.      Legal Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); FED. R. BANKR. PROC. 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings"). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . [S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250; FED. R. CIV. PROC. 56(e)(2).

Evidence presented by the parties at the summary judgment stage must be admissible. FED. R. CIV. PROC. 56(e)(1). In reviewing the record, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See *Falls*

1  *Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir. 1985); *Thornhill Pub. Co., Inc.*

2  *v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

3      **2.**    **Whether Ginger Root's Alter Ego Claim Is the Property of the**

4      **Bankruptcy Estate**

5      The parties' cross-motions for summary judgment turn on a single issue: whether the alter

6  ego claim asserted by Ginger Root against PJHB is Ginger Root's property or the property of the

7  bankruptcy estate, such that it can be pursued by the Trustee for the benefit of all of the creditors.

8  A party can seek to hold a principal or parent company responsible for the liabilities of a subsidiary

9  corporation by piercing the subsidiaries' corporate veil. See *Mesler v. Bragg Management Co.*,

10  39 Cal.3d 290, 300 (1985).  To do so, however, the plaintiff must show that there is such a unity

11  of interest and ownership between the two corporations that one functions as the alter ego of the

12  other, and that an inequitable result would follow if the parent were not held liable.  *Id.*; *Hall v.*

13  *North American Indus. Servs., Inc.*, No. 1:06-cv-00123 OWW SMS, 2007 WL 3020075, *23

14  (E.D. Cal. Oct. 11, 2007); see also *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831

15  F.2d 1339, 1344 (7th Cir. 1987) ("The alter ego doctrine is used in certain situations to displace

16  the basic principle of the law of corporations that a corporation and its shareholders are separate

17  legal entities with limited liabilities.  When certain state-governed requirements are met, the alter

18  ego theory allows the legal distinction between a corporation and its shareholders, directors and

19  officers to be disregarded or set aside in order to reach the assets of those individuals 'behind the

20  corporation.'  The general reason for allowing the corporation's 'veil to be pierced,' [is to

21  recognize] . . . that the corporation is a 'fictitious entity' which is simply a business conduit of

22  another entity . . . ," citing 18 Am.Jur.2d Corporations §§ 45, 46, 50, 51, 52 (1986)).  APP

23  is a California corporation.[80]  Under California law, a corporation in bankruptcy may pierce its

24  own veil to seek recovery for its creditors if equity so demands.  See *In re Davey Roofing, Inc.*,

25  167 B.R. 604, 608 (Bankr. C.D. Cal. 1994); *Stodd v. Goldberger*, 73 Cal.App.3d 827, 833

26  (1977).

27  ────────────────

28      [80]SJ AA at 59, ¶ 5.

Section 541 of the Bankruptcy Code defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The provision is construed broadly and includes causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983). Bankruptcy courts in the Ninth Circuit have held that alter ego claims alleging generalized injury to the debtor corporation and all of its creditors are property of the bankruptcy estate under § 541, and may be asserted only by the bankruptcy trustee. See *In re Davey Roofing*, 167 B.R. at 605–08 ("[I]n the context of bankruptcy, only the Debtor or Trustee has standing to assert the alter ego claim where injury to the corporation is alleged. Debtor's exclusivity to assert the claim follows from the conclusion that alter ego claims are property of the bankrupt estate. Each creditor has a claim on the property of the estate, subject to the priorities of the Bankruptcy Code, but property of the estate does not belong to any creditor individually"); *CBS, Inc. v. Folks* (*In re Folks*), 211 B.R. 378, 386 (B.A.P. 9th Cir. 1997) ("The 'trustee has the right to bring any action in which the debtor has an interest' because this is property of the estate, the trustee is acting to benefit the debtor's estate, and is ultimately benefitting the estate's creditors upon distribution," citing *Koch*, 831 F.2d at 1348.

Whether an alter ego claim belongs to the bankruptcy estate or to an individual creditor is decided under state law. See *In re Folks*, 211 B.R. at 385.[81] California recognizes both general

---

[81]Since APP is a California corporation, its bankruptcy petition was filed in the Central District, and Ginger Root's alter ego claim was filed in California state and federal court, California law governs in deciding whether the alter ego claim belongs to the Trustee for the benefit of all creditors or to Ginger Root as an individual creditor. See *In re Folks*, 211 B.R. at 384-85 ("The question of whether the alter ego claim against Folks is property of the BYCA estate or belongs to an individual creditor, for the purpose of determining standing to assert the claim, depends upon which state law permits an attempt to pierce the corporate veil. The court will look 'to the law of the state in which legal or equitable title to the cause of action is asserted.' *Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1344 (7th Cir.1987), cert. denied, 485 U.S. 906 . . . (1988). BYCA was incorporated in California and has its principal place of business in Los Angeles, California. Thus, California law is controlling"). See also *Koch Refining*, 831 F.2d at 1344-45 ("To determine whether this alter ego action is property of the debtor or of the appellants, . . . we must turn to the law of the state in which legal or equitable title to the cause of action is asserted. . . . [N]either the parties' briefs nor the record of this case identified the controlling state. Since it could be Indiana (the location of the debtor ECI) or

and particularized alter ego claims.  See *id.* ("In California, two types of alter ego claims are recognized.  The first alleges 'injury to the corporation giving rise to a right of action in it against defendants'[; the second involves] 'causes of action belong[ing] to each creditor individually,'" quoting *In re Davey Roofing*, 167 B.R. at 608).  A general claim is property of the debtor corporation and becomes property of the bankruptcy estate.  *Id.* at 387.  A particularized claim belongs to an individual creditor and does not become property of the estate.  *Id.*

### a. Differentiating Between General and Particularized Alter Ego Claims

"To determine whether the action is personalized to an individual creditor or accrues generally to [the bankrutpcy estate], the court must look to the alter ego claim and the injury for which relief is sought."  See *id.*  A particularized, i.e., personal, claim exists where "the claimant himself is harmed and no other claimant or creditor has an interest in the cause."  *Id.* (quoting *Koch Refining*, 831 F.2d at 1348-49.  A general claim, by contrast, exists where "the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors."  *Id.* (quoting *Koch Refining*, 831 F.2d at 1349).  "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."  *Id.* (quoting *Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993).

Applying this standard, the *In re Davey Roofing* court held that alter ego claims alleging that a principal had misappropriated corporate funds were general claims belonging to the bankruptcy estate.  167 B.R. at 608.  A creditor of Davey Roofing, Inc. had filed a state court claim alleging that the corporation's principal had commingled corporate funds with his own, withdrawn corporate funds for personal use and left the corporation undercapitalized to pay its creditors.  *Id.* at 606.  After the company filed a bankruptcy petition, the trustee sought a determination by the

---

Illinois (the venue of this cause and of the bankruptcy proceedings), we will examine the laws of each state").

bankruptcy court as to whether these claims were the property of the estate. *Id.* Finding that the misappropriation of corporate funds was an action that affected all creditors, the court held that the trustee was the proper party to assert the alter ego claim. *Id.* at 608. *In re Davey Roofing* involved a quintessential general alter ego claim because the conduct that supported piercing the corporate veil depleted the corporation's finances, leaving it unable to pay its creditors. See, e.g., *In re Folks*, 211 B.R. at 387 ("The alter ego claim alleges that Folks failed to observe any corporate formalities with respect to BYCA and used bank accounts and funds of BYCA for personal and family expenditures. This is a general claim because all creditors are affected and no particularized injury to [plaintiff] exists"). See also *Koch Refining*, 831 F.2d at 1349 ("[Creditors] have sought a declaration that the Member-Owners harmed [the corporation, and that the Member-Owners' manipulation of [the corporation] had a detrimental effect on them; this secondary or resultant effect is not a sufficient showing that they themselves were injured by the Member-Owners"); *In re Real Marketing Services, LLC*, 309 B.R. 783, 788 (S.D. Cal. 2004) ("[A]n action is derivative of the corporation's rights, and hence not independent of them, if 'the gravamen of the complaint is injury to the corporation . . . or it seeks to recover assets for the corporation or to prevent the dissipation of its assets,'" quoting *PacLink Communications Int'l, Inc. v. Super. Ct.*, 90 Cal.App.4th 958, 964 (2001)).

In contrast, courts have found particularized injury to a creditor when the conduct that supports piercing the corporate veil is the same conduct that directly harmed the creditor. In *Variable-Parameter Fixture Development Corp. v. Morpheus Light*, Inc., 945 F.Supp. 603, 607–08 (S.D.N.Y. 1996), for example, the court found that plaintiff asserted an individualized alter ego claim against the director and president of a bankrupt company because it alleged that he had participated "directly and actively" in infringing its patent, and was liable for damages as a result. *Id.* at 607. The court noted plaintiff's additional allegation that the officer had "withdrawn the corporate funds available to satisfy a judgment for plaintiff," *id.*, but concluded that this was not the "gist" of the claim. Rather, it held, the injury was particularized because "[plaintiff] claims that as the alter ego of [the corporation], Richardson caused harm directly to [it]." *Id.* at 608. Similarly, a union that alleged an alter ego had sub-contracted workers to an undercapitalized front

corporation "'specifically to avoid paying the wages and fringe benefits required by the collective bargaining agreement'" pleaded particularized injury arising from its actions.  *Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*, No. C-04-952 SC, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004) (quoting plaintiffs' complaint).  The court noted that "[p]laintiffs allege[d] that the unity of interest between [the alter ego] Defendants and [the bankrupt corporation], along with [the corporation's] inadequate capitalization, was accomplished 'solely for the purpose of avoiding their obligations to Plaintiffs. . . .'" *Id.*

### b.    Whether Ginger Root's State and Federal Actions Allege a Particularized Alter Ego Claim

Ginger Root's state and federal complaints plead limited, generic allegations concerning the necessity of piercing APP's corporate veil.  In its state complaint, Ginger Root alleges: (1) that "APP was insufficiently capitalized"; (2) that PJHB "utilized the assets, funds, equipment, and/or capital of APP for [its] own purposes and use"; (3) that "APP was merely a shell, conduit, and/or instrumentality through which [PJHB conducted its] personal business"; (4) that PJHB "exercised such complete control over APP and its business activities . . . that its separateness, individuality, and independence from [PJHB] did not exist"; and (5) that "corporate formalities recognizing the separateness of APP as an entity separate and apart from [PJHB] were not observed."[82]  In bankruptcy court, Ginger Root's counsel conceded that these assertions were "boilerplate alter ego allegations."[83]  In its federal complaint, Ginger Root included even less detail, and alleged simply and in conclusory fashion that "PJHB [was] the parent corporation of APP, and . . . the alter ego of APP."[84]

Standing alone, these allegations do not support a claim of particularized injury because they are not associated with the hazardous waste contamination for which Ginger Root seeks damages.

---

[82]SJ AA at 36–37.

[83]*Id.* at 366.  In its appeal brief, Ginger Root denominated its alter ego pleading as "'practice guide' allegations."

[84]*Id.* at 60, ¶ 14.

20

See *In re Folks*, 211 B.R. at 387 ("To determine whether the action is personalized to an individual creditor or accrues generally to [the bankrutpcy estate], the court must look to *the alter ego claim and the injury* for which relief is sought" (emphasis added)); see also *Ahcom, Ltd. v. Smeding*, No. C-07-1139 SC, 2009 WL 1108658, *2 (N.D. Cal. Apr. 24, 2009) ("The holding in *Folks* applies whenever a general alter ego theory is used as the basis for liability for a distinct cause of action, even if that separate cause of action involves unique harm"); *Eddleman v. Thomas*, No. 07-207, 2007 WL 3051261, *1 (D. Nev. Oct. 12, 2007) (applying *Folks* to claims for breach of lease and unjust enrichment asserted on an alter ego theory). The bankruptcy court found that Ginger Root's alter ego claim alleged generalized harm as in *Koch Refining*, i.e., that it sought an alternate source of funds to pay for the harm caused by the debtor.[85] As it noted at the hearing: "You're suing, and it's for indemnification. You've incurred all these costs, and you want somebody to be responsible for it, and the Debtor has very shallow pockets, but maybe PJHB has deeper pockets. Well, why wouldn't every other creditor think we also want some deeper pockets?"[86]

To determine whether the bankruptcy court correctly interpreted the nature of Ginger Root's claim, the court must assess whether, despite its generalized pleading of an alter ego claim, Ginger Root's allegations that "defendants" caused injury plead direct conduct by PJHB such as would support a particularized alter ego claim. Ginger Root argues that "the Bankruptcy Court did not consider the basis for [the] Alter Ego Claims, which arise from PJHB's active participation in causing the contamination of the property."[87] Ginger Root's state negligence claim, for instance, alleges that "Cross-Defendants" breached their duty of care in handling hazardous materials at the property.[88] Similarly, its breach of contract claim alleges that "Cross-Defendants . . . breached the lease by failing and neglecting . . . to properly handle . . . materials used in its business

---

[85]*Id.* at 364–65.

[86]*Id.* at 365.

[87]App.'s SJ Br. at 12.

[88]SJ AA at 243.

21

operations."[89]   The CERCLA claim in Ginger Root's federal complaint alleges that all "[d]efendants were 'operators'" when releases occurred at the property.[90]  Although ambiguous, these allegations can be interpreted as alleging direct action by PJHB that harmed Ginger Root. The allegations do not make clear whether, or delineate in what matter, PJHB's  conduct related to its status as an alleged alter ego of APP, however.   The bankruptcy court found that the allegations against PJHB pled conduct "always by and through APP."[91]  It stated: "[T]here's nothing in here that alleges that PJHB was operating on the property independently, for its own purpose, other than as the alter ego of APP."[92]

Although it disputes this finding, Ginger Root did not clarify in the bankruptcy court, and has not clarified on appeal, the nature of PJHB's alleged alter ego role.  In its appeal brief, Ginger Root argues that "the state and federal complaints allege that both APP *and* PJHB failed to properly handle, store, care for and/or use hazardous substances at the property and that both APP *and* PJHB participated in all the actions that harmed Ginger Root."[93]  Ginger Root appears to reference its generic allegations that "defendants" or "cross-defendants" acted to cause the contamination.  As directed against PJHB, however, these allegations appear to be based on claims that PJHB is directly liable for Ginger Root's damage, not on claims that it participated in APP's actions as APP's alter ego.  Indeed, at the hearing in bankruptcy court, Ginger Root asked for, and received, assurance that the bankruptcy court's decision did not extend to any direct, non-alter ego,

---

[89]*Id.* at 244.  Likewise, Ginger Root's state nuisance claim alleges conduct by "cross-defendants."  (AA 245.)

[90]*Id.* at 260.  Although this claim states specifically that "Renshaw had managerial control over APP" at the time the releases occurred, there is no similar claim concerning PJHB.  (AA 260.)

[91]AA 361.

[92]*Id.*  In so concluding, the bankruptcy court noted Ginger Root's argument that both defendants caused its damage, but after reviewing the allegations of the state and federal complaints, noted that there was no pleading of direct activity by PJHB that injured Ginger Root. (See AA 361–64.)

[93]App.'s SJ Br. at 17.

claims it had alleged against PJHB.[94]  In contrast to Ginger Root's allegations that PJHB itself contaminated Ginger Root's property, the complaints nowhere identify the manner in which PJHB directed or participated *in the actions of APP* that caused contamination, however.  For this reason, the bankruptcy court was unwilling to construe Ginger Root's allegations as stating a particularized alter ego claim.

The court agrees with the bankruptcy court that Ginger Root's collective allegations that "defendants" or "cross-defendants" contaminated the property do not support a particularized alter ego claim against PJHB for harm caused by APP.  While Ginger Root's complaints assert that PJHB injured it by contaminating its property, it asserts that PJHB caused this injury in its independent capacity, not as the alter ego of APP.  Although Ginger Root also alleges that PJHB was the alter ego of APP, the conduct it cites in support of this assertion has nothing to do with the contamination of Ginger Root's property.  Rather, Ginger Root bases its alter ego claim on such conduct as the insufficient capitalization of APP and failure to observe corporate formalities.

Stated differently, it was not the undercapitalization of APP, the failure to observe corporate formalities, or PHJB's use of APP as an instrumentality for conducting business that caused contamination at Ginger Root's property.  That injury arose from specific actions taken by APP as a tenant at the property and operator of facilities there.  *Ahcom*, 2009 WL 1108658 at *2 ("Absent a unique injury arising from the same facts that are used to pierce the veil, facts giving rise to an alter ego theory could be used by any creditor to bring a claim for repayment against the debtor's shareholders").  Ginger Root's alter ego claim is based on the assertion that APP was not an independent corporate entity.  It does not allege that PJHB directed APP's storage of hazardous substances at the property or that PJHB took action to render APP insolvent.  See *Trustees of the Bricklayers Local 7*, 2004 WL 1774223 at *4 (finding that alter ego liability was particularized because the alter ego had undercapitalized the bankrupt employer and sub-contracted work to it in order to make it appear that the bankrupt corporation was the employer of the unionized employees and to avoid wage and hour obligations to them, and noting that "[p]laintiffs are not alleging a

---

[94]AA at 369.

23

general injury to Domustyle and all of its creditors.  Rather, Plaintiffs are alleging that they were injured in a way that other creditors of Domustyle were not; in fact, they are alleging that Domustyle's undercapitalization was achieved specifically to avoid financial obligations to Plaintiffs").  Thus, while Ginger Root can pursue its direct claims against PJHB and recover if it demonstrates that PJHB itself caused the contamination, it cannot puruse its alter ego claim, which appears to be no different than those of any other creditor of APP.  Cf. *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) (noting that "there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct – not derivative – claim against the third party, which only the creditor himself can enforce," and that the creditor can sue on such claims "directly, outside of bankruptcy").

Ginger Root argues that it has alleged particularized injury similar to that asserted in *Variable-Parameter*, where plaintiff contended that the corporate president/director whom it claimed was an alter ego of the corporation actively participated in the entity's infringing actions. 945 F.Supp. at 607–608 ("Variable claims that as the alter ego of [the corporation], Richardson caused harm directly to Variable").  The plaintiff in *Variable-Parameter*, however, alleged that the president/director participated in the infringement in his role as alter ego of the corporation. Here, by contrast, Ginger Root does not connect PJHB's alleged contamination of its property to its alleged role as APP's alter ego.  Rather, Ginger Root alleges that PJHB independently acted to contaminate its property; it asserts direct claims – not alter ego claims – against PJHB on this basis.  The Trustee did not assert a right to prosecute or transfer these direct claims, and the bankruptcy court specifically stated that they fell outside the ambit of its decision that the alter ego claim based on generalized allegations of undercapitalization, failure to observe corporate formalities, and lack of corporate independence belonged to the bankruptcy estate.[95]  *Variable-Parameter* is thus distinguishable, and the bankruptcy court correctly found that Ginger Root did not allege a particularized alter ego claim.

---

[95]*Id.* at 369.

At oral argument, Ginger Root's counsel argued for the first time that it should be given an opportunity to amend its complaints to detail the nature of its alter ego claim more fully. Ginger Root conceded that it did not make this request in the bankruptcy court or in its briefs on appeal. As noted by the Supreme Court, "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Nonetheless, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.* at 121.

Here, the court declines to address the propriety of allowing Ginger Root to amend its complaints. As noted, prior to oral argument, Ginger Root made no effort to obtain leave to amend its complaints to modify the pleading of its alter ego claims. Ginger Root was on notice of its potential failure to plead a particularized alter ego claim as early as February 3, 2009 when the Trustee filed his adversary action. Ginger Root did not seek to have the bankruptcy court lift the automatic stay so that it could move in this court to amend its federal and state complaints against PJHB or seek leave in this court or in state court to file an amendment. Similarly, Ginger Root did not argue in opposition to the Trustee's motion for summary judgment in bankruptcy court or on appeal that it could amend the complaints to state a particularized alter ego claim. Finally, as noted in the following section of this order, Ginger Root did not adduce evidence demonstrating that it could successfully amend to state a particularized alter ego claim. Thus, Ginger Root's belated request that it be permitted to amend the state and federal complaints is unavailing.

> **c.    Whether Ginger Root Adduced Evidence Raising Triable Issues of Fact Regarding a Particularized Alter Ego Claim**

Even were the court it to construe Ginger Root's direct claims against PJHB as having been incorporated in its alter ego claim, and as alleging an undefined manipulation or control of APP's handling of hazardous substances at the property, Ginger Root adduced no evidence supporting such a particularized claim in its opposition to the Trustee's motion for summary judgment. As

1  the Trustee noted in the bankruptcy court,[96] the declarations Ginger Root submitted in opposition

2  to his summary judgment motion discussed *APP*'s operations at the property; they did not reference

3  PJHB's actions.[97]   At oral argument, counsel for Ginger Root argued that it had not had enough

4  time to develop evidence to support a particularized alter ego claim, as the depositions of relevant

5  witnesses had been cancelled by APP or PJHB in the federal action, and the bankruptcy proceeding

6  was pending only four months before summary judgment was entered.   Ginger Root, however, did

7  not file a motion in bankruptcy court to continue the summary judgment hearing pending the

8  completion of additional discovery under Rule 56(f) and Bankruptcy Rule 7056.   Additionally, the

9  court takes judicial notice of the docket in *Ginger Root Office Associates LLC v. Advanced*

10  *Packaging & Products Co.*, Case No. CV 07-05568 MMM, which reflects that the case was on

11  the verge of trial at the time it was stayed on March 26, 2009.   Discovery had concluded on

12  December 8, 2008, and a pretrial conference had been conducted on January 5, 2009.   Motions

13  *in limine* had been filed and argued.[98]   Given the status of the federal action, and the fact that

14  Ginger Root could have argued in bankruptcy court that it needed a continuance to conduct

15  discovery under Rule 56(f), the court concludes that Ginger Root had ample opportunity to develop

16  evidence supporting a particularized alter ego claim, or at least to make a record that it required

17  more time.

18      Accordingly, the court concludes that even if Ginger Root's state and federal court

19  complaints could be interpreted as alleging a particularized injury arising from PJHB's status as

20  APP's alter ego, Ginger Root did not adduce evidence raising triable issues of fact regarding such

21

22      [96]*Id.* at 310.

23      [97]See Declaration of Allison M. Lynch, SJ AA at 131–53; AA 270–92.

24      [98]A court may take judicial notice of court filings and other matters of public record.  See
25  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (citing
26  *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

27

28

1   a claim before the bankruptcy court.

2        Consequently, Ginger Root did not meet its burden of establishing that there were triable

3   issues of fact concerning PJHB's responsibility as APP's alter ego for environmental contamination

4   at the property.  See *Celotex Corp.*, 477 U.S. at 323 (holding that on an issue as to which the

5   nonmoving party will have the burden of proof, the movant can prevail merely by pointing out that

6   there is an absence of evidence to support the nonmoving party's case);. *Liberty Lobby*, 477 U.S.

7   at 250 (holding that if the moving party meets its initial burden, the nonmoving party must set

8   forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a

9   genuine issue for trial," quoting FED.R.CIV.PROC. 56(e)(2)).

10          **3.**      **Conclusion Regarding the Bankruptcy Court's Grant of Summary**

11               **Judgment**

12        By attempting to conflate its direct claims against PJHB with its alter ego claim, and by

13   relying on inherently ambiguous collective allegations concerning the conduct of "defendants,"

14   Ginger Root attempts to muddy the distinction between particularized and general injury for alter

15   ego purposes.  As noted by the bankruptcy court, however, Ginger Root alleges no independent

16   action by PJHB that relates to its theory of alter ego liability.  Further, Ginger Root adduced no

17   evidence raising triable issues regarding the fact that it suffered particularized injury as a result of

18   PJHB's alleged alter ego status.  The boilerplate alter ego allegations in Ginger Root's complaints

19   support only a finding of general injury, making the alter ego claim the property of the bankruptcy

20   estate.  See *In re Davey Roofing*, 167 B.R. at 605–08.  The particularized harm allegedly caused

21   by PJHB is the basis of direct claims that Ginger Root asserts against PJHB rather than its claim

22   based on alter ego liability.  The bankruptcy estate does not contend that it has any interest in these

23   direct claims.[99]  Accordingly, the court affirms the bankruptcy court's findings that Ginger Root's

24   alter ego claim is the property of the bankruptcy estate, that the Trustee was entitled to the entry

25   of summary judgment in his favor in the adversary action, and that Ginger Root's cross-motion for

26   summary judgment was properly denied.

27

28     [99]SJ AA at 369–70.

### C.   The Bankruptcy Court's Approval of the Assets Sale

Ginger Root also appeals the bankruptcy court's order approving the Trustee's sale of assets, including the alter ego claim, to PJHB.  Ginger Root argues: (1) that the bankruptcy court did not have jurisdiction to approve a sale of the alter ego claim because its summary judgment order regarding ownership of the claim had been appealed; (2) that the bankruptcy court erred in finding that PJHB was a good faith purchaser; (3) that the bankruptcy court erred in finding that the assets sale, which was effectively a compromise of claims, was fair and equitable; and (4) that Ginger Root was denied due process because it did not receive advance notice of the witnesses who testified at the hearing.

### 1.   Whether the Bankruptcy Court Had Jurisdiction to Approve a Sale of the Alter Ego Claim

Ginger Root asserts that the bankruptcy court was divested of jurisdiction to enter orders concerning the alter ego claim because it had appealed the court's order that the claim belonged to the Trustee.  Under 11 U.S.C. § 363(b)(1), "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ."  The timely filing of a notice of appeal, however, will typically divest a bankruptcy court of jurisdiction "over those aspects of the case involved in the appeal."[100]  See *Neary v. Padilla* (*In re Padilla*), 222 F.3d 1184, 1190 (9th Cir. 2000), superseded by statute on other grounds as recognized in *United States Voting Machines, Inc. v. Powelson*, No. C 05-01281 JF, 2007 WL 4287526, *3 n.5 (N.D. Cal. Dec. 6, 2007).  "This judge-made principle is designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue."  *In re Marino*, 234 B.R. 767, 769 (9th Cir. BAP 1999).  While this rule does not divest a bankruptcy court of jurisdiction to "take actions that preserve the status quo during the pendency of an appeal," the court "'may not finally adjudicate substantial rights directly involved in the appeal.'"

---

[100]Federal courts have an independent obligation to ascertain that they have subject matter jurisdiction.  The jurisdiction that a trial court loses to an appellate court falls in the category of subject matter jurisdiction.  See, e.g., *In re Smith Corona Corp.*, 212 B.R. 59, 60 (Bankr. D. Del. 1997).

*In re Padilla*, 222 F.3d at 1190 (quoting *McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734-35 (9th Cir. 1982)); see also *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1988).  "Absent a stay or supersedeas, the trial court also retains jurisdiction to implement or enforce the judgment or order [athough it] may not alter or expand upon the judgment."  *In re Padilla*, 222 F.3d at 1190.

The bankruptcy court held that, despite Ginger Root's appeal of its summary judgment order, it had jurisdiction to approve the Trustee's proposed sale of the alter ego claim because approval of the sale would not disrupt the status quo.[101]  Ginger Root disputes this finding, relying heavily on *Levey v. Systems Div., Inc.* (*In re Teknek, LLC*), 563 F.3d 639, 651 (7th Cir. 2009). *In re Teknek* involved a bankruptcy court's entry of an injunction against a creditor's settlement of a collection action it had filed against alter egos of the debtor corporation outside bankruptcy. The judgment the creditor had obtained named not only the debtor, but another corporation, as well as the three alter egos.  See *id.* at 645.  The debtor's trustee contended that the bankruptcy estate rather than the creditor owned the alter ego claims related to the debtor.  As the Seventh Circuit described the situation as follows:

> "[Creditor] argues that it can reach the alter egos directly because of this judgment, and, in any event, that it can reach the alter egos via [the non-debtor corporation] on a veil-piercing theory.  At the same time, the trustee argues that it can reach the alter egos via [the debtor corporation] and collect on [creditor's] judgment on behalf of the estate because that judgment is a debt the alter egos also owe to the debtor. This is because, in addition to looting [the non-debtor corporation], the alter egos also looted the debtor.  The alter egos are therefore liable to the debtor for the [creditor] judgment because of their responsibility for the debtor's inability to repay it.  In essence, then, both [the creditor] and the trustee have a claim against the alter egos, but only one of them can receive satisfaction, because the patent judgment can

---

[101]Sale AA at 547 (noting that the appeal "doesn't prevent me from going forward with promoting execution of the judgment").

1   only be recovered once." *Id.*

2   While an appeal of the bankruptcy court's injunctive order was pending, the trustee filed a motion

3   in bankruptcy court to compromise his claims with the alter egos. The bankruptcy court entered

4   an order approving the trustee's settlement. Atlhough the trustee argued that the settlement

5   involved "claims 'separate and apart from the claims at issue in the . . . appeal'" of the injunction

6   against the creditor's action, and the Seventh Circuit agreed that it did "not directly and specifically

7   address the issues immediately before" the court on appeal, the court noted that the order "deal[t]

8   with matters that [were] integral to th[e] appeal." *Id.* at 651. It concluded, as a result, that "the

9   relationship [between the appeal and the trustee's settlement with the alter egos was] so close that

10   it [was] obvious that the bankruptcy court lacked jurisdiction to approve the settlement." *Id.*

11       As in *In re Teknek*, the proposed sale of the alter ego claim was not directly at issue in

12   Ginger Root's appeal of the bankruptcy court's summary judgment order. Ownership of the alter

13   ego claim, however, was the central question raised by that appeal, and was integral to it. See *id*.

14   Thus, bankruptcy court's approval of the Trustee's transfer of the alter ego claim to a third party

15   "deal[t] with matters that [were] integral to th[e] appeal." *Id.* at 651. "When a [debtor] sells

16   property with the approval of the court, the buyer acquires title clear of all claims in the

17   bankruptcy. The property may not be hauled back into the estate, and the terms of the sale are

18   inviolate in the absence of fraud or collusion." *In re Chicago, Rock Island and Pacific R.R. Co.*,

19   794 F.2d 1182, 1186 (7th Cir.1986). As a consequence, Ginger Root was forced to seek a stay

20   lest its appeal of the summary judgment order become moot before it could be heard. See *In re

21   Padilla*, 222 F.3d at 1190 (noting that a bankruptcy court "may not finally adjudicate substantial

22   rights directly involved in the appeal").

23       While the Trustee argues that the bankruptcy court had jurisdiction to approve the sale

24   because the transfer did not modify the status quo, the court cannot agree. The proposed sale

25   transferred the alter ego claim that Ginger Root contended it owned to a third party whom the

26   bankruptcy court found to be a good faith purchaser. This foreclosed Ginger Root's further

27   prosecution of the claim, altered the position of the parties, and expanded the effect of the rights

28   determined in the summary judgment order. See *id.* (noting that a bankruptcy court may protect

the status quo during appeal, but cannot "expand upon the judgment").  The Trustee cites several cases interpreting 11 U.S.C. § 363(m) as evidence that the bankruptcy court had jurisdiction.  That section provides that "[t]he reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  See *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1171 (9th Cir. 1988) ("whether an order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal").  This rule is inapplicable here, as the appeal that divested the bankruptcy court of jurisdiction to approve the sale of the alter ego claim to PJHB was not an appeal of the order approving that sale, but an appeal of the summary judgment order that recognized the Trustee as the owner of the claim.  While Ginger Root required a stay to prevent enforcement of the sale, it should not have had to seek a stay to delay approval of the sale.  See *In re Padilla*, 222 F.3d at 1190 ("it is immaterial that the Trustee failed to obtain a stay pending review since a stay is necessary only to halt actions that a court is empowered to take").  Accordingly, the court finds that the bankruptcy court lacked jurisdiction to approve sale of the alter ego claim to PJHB during the pendency of Ginger Root's appeal of the summary judgment order.

## 2.     Conclusion Regarding the Bankruptcy Court's Approval of the Sale of the Alter Ego Claim

Because ownership of the alter ego claim was the central issue in Ginger Root's appeal of the bankruptcy court's summary judgment order, the bankruptcy court lacked jurisdiction to approve transfer of the claim by the Trustee to a third party.  See *In re Padilla*, 222 F.3d at 1190.  Since the bankruptcy court lacked jurisdiction, its order approving the sale of assets is void.  See *In re Markarian*, 228 B.R. 34, 48 (1st Cir. BAP 1998) ("Since the Bankruptcy Court had no jurisdiction to approve the parties' compromise and enter dismissal, those orders are void").  Accordingly, the court remands this matter to the bankruptcy court for further proceedings consistent with this order.

### III.  CONCLUSION

For the reasons stated, the order of the bankruptcy court granting the Trustee's motion for summary judgment and denying Ginger Root's cross-motion for summary judgment is affirmed. The bankruptcy court's order approving the bankruptcy estate's sale of assets is reversed and remanded for further proceedings consistent with this order.

DATED: January 12, 2010

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE